UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-00320-RJC-DSC

| | |
|---|---|
| CATHERINE MCKOY, MARKUS FRAZIER, MILLARD WILLIAMS, and LYNN CHADWICK, <br><br> Plaintiffs, <br><br> v. <br><br> ACN OPPORTUNITY, LLC, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) **Order** |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Preliminary Injunction (the "Motion"). (Doc. No. 10). For the reasons stated herein, the Motion for Preliminary Injunction is **DENIED**.

I.  BACKGROUND

A. Plaintiffs' IBO Agreements

Defendant ACN Opportunity, LLC ("ACN") is a multilevel marketing company that markets telecommunications, energy, and essential products and services for homes and businesses to customers via Independent Business Owners ("IBOs"). (Doc. No. 19 at 1). These products and services include, among other things, local and long-distance telephone services, digital phone services, wireless phone services, satellite television services, energy (electricity and natural gas) services, merchant services, and home security services. (*Id.*). Between 2013 and 2016, the Plaintiffs each separately became ACN IBOs, and as part of the process each agreed to IBO

Agreements (the "IBO Agreements"). (Doc. No. 12-5; Doc. No. 12-6; Doc. No. 12-7; Doc. No. 12-8).

There appear to be two different versions of the relevant IBO Agreements, depending on the Plaintiff and time period. One version of the IBO Agreements includes the following arbitration provision:

> In the event of a dispute between me and ACN as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is agreed that such disputes shall be exclusively resolved through binding arbitration before the American Arbitration Association pursuant to the Commercial Rules of Arbitration.

(Doc. No. 12-5; 12-6; 12-8). The other version of the IBO Agreements includes the following arbitration provision:

> In the event of a dispute between ACN and me as to our respective rights, duties and obligations arising out of or relating to this Agreement, it is mutually agreed that such disputes shall be exclusively resolved through the process and according to the provisions specified in Section II.B. of the ACN Policies and Procedures ("Dispute Resolution Provisions") . . . The Dispute Resolution Provisions require, without limitation, and except as otherwise expressly stated, that ACN and I will resolve all disputes through binding arbitration before the American Arbitration Association pursuant to the Commercial Rules of Arbitration.

(Doc. No. 12-5; Doc. No. 12-7).

According to Plaintiffs, they are of low-income, and of limited educational background - none completed college (although one completed culinary school), and some did not complete high school. (Doc. No. 12 ¶ 6; Doc. No. 12-1 at 53:11- 53:15; Doc. No. 12-2 at 8:15-9:10; Doc. No. 12-3 at 11:07-11:19). Plaintiff McKoy was working as a home hospice caregiver at the time she signed up for ACN. (Doc. No. 12-1 at 57:11-62:22). Plaintiff Williams was homeless and working part time at the Salvation Army. (Doc. No. 12 ¶ 5). Plaintiff Frazier was working as a cashier and food delivery driver at Jimmy John's. (Doc. No. 12-2 at 11:02-12:10). Plaintiff Chadwick was working part-time as a school custodian. (Doc. No. 12-3 at 31:11-32:25).

### B. The SDNY Action

On October 29, 2018, Plaintiffs filed a class action lawsuit against then-President Donald Trump, his adult children, and the Trump Corporation (the "Trumps") in the United States District Court for the Southern District of New York (the "SDNY Action"). (Doc. No. 12-9). The Plaintiffs originally filed the SDNY Action under pseudonyms. (*Id.* at 2-17, 22). In the SDNY Action, in short, Plaintiffs allege that the Trumps' endorsement of ACN defrauded and misled Plaintiffs into paying fees to become ACN IBOs by conveying false messages about the risks and profitability of investing in ACN as well as the payments the Trumps received for their endorsement. (Doc. No. 12-4). ACN is not a defendant in the SDNY Action. (Doc. No. 12-9).

In September 2019, as part of the SDNY Action, Plaintiffs served a non-party subpoena requesting documents to ACN. (Doc. No. 12 ¶ 7). When ACN did not comply with the non-party subpoena, on January 31, 2020, Plaintiffs filed a motion to compel. (*Id.* ¶ 8). In response, ACN opposed the Plaintiffs' motion to compel and asked the court to compel arbitration under the IBO Agreements. (Doc. No. 12-10). ACN argued the discovery dispute and the entire SDNY Action against the Trumps were both subject to arbitration under the IBO Agreements. (*Id.*; Doc. No. 12-11 at 12-13).

On April 9, 2020, the court in the SDNY Action granted Plaintiffs' motion to compel and denied ACN's request to compel arbitration. (Doc. No. 12-11). The court, in an oral ruling, concluded the discovery dispute was not within the scope of the IBO Agreements' arbitration provisions and that it lacked jurisdiction to compel arbitration. (*Id.* at 14-15). The court also denied ACN's request to compel the entire SDNY Action to arbitration because ACN's argument was a mischaracterization of the SDNY Action as an action against ACN, and as a non-party ACN lacked standing to compel arbitration. (*Id.* at 16). ACN appealed, and on July 28, 2021, the Second

Circuit affirmed. (Doc. No. 12-12). The Second Circuit concluded the district court lacked subject matter jurisdiction over ACN's request to compel arbitration since ACN was not a party to the SDNY Action. (*Id.* at 38-43).

### C. ACN's Arbitration Demands

While Plaintiffs and ACN litigated the motions to compel in the SDNY Action, on February 10, 2020, ACN attempted to initiate an arbitration against Plaintiffs in Charlotte, North Carolina with the American Arbitration Association ("AAA"). (Doc. No. 12 ¶ 10). The AAA rejected ACN's arbitration demands because ACN could not identify the Plaintiffs by name, and the court in the SDNY Action denied its request to lift Plaintiffs' pseudonymity. (*Id.* ¶ 11).

As the SDNY Action proceeded, on August 30, 2021, the court in the SDNY Action entered a stipulation and order lifting Plaintiffs' pseudonymity. (Doc. No. 12-9). On September 14, 2021, Plaintiffs filed a Second Amended Complaint substituting their real names for their pseudonyms. (*Id.*; Doc. No. 12-4). Thereafter, on April 5, 2022, ACN commenced arbitration against Plaintiffs in Charlotte, North Carolina (the "Arbitration Demands"). (Doc. No. 12 ¶ 12). ACN's operative Arbitration Demands assert various breaches of the IBO Agreements as a result of the SDNY Action, which ACN characterizes as a dispute between Plaintiffs and ACN arising from or related to the IBO Agreements. (Doc No. 12-13). According to ACN, the SDNY Action caused damages and affected ACN's recruiting efforts due to the lack of confidentiality, the negative media reports, and Plaintiffs' targeted class recruitment. (*Id.*). ACN requests damages for breach of the IBO Agreements, attorneys fees and costs, and a declaratory judgment effectively limiting the SDNY Action and declaring that the Plaintiffs' reliance on the Trumps' endorsement was unreasonable as a matter of law "because the IBO Agreement[s] clearly state[] that there is no guarantee of any income and no warranty provided." (*Id.*).

### D. Plaintiffs File This Action

Plaintiffs did not file a response to the Arbitration Demands with the AAA. (Doc. No. 12 ¶ 15). Instead, Plaintiffs filed this action. (*Id.*; Doc. No. 1). Their Complaint requests: (1) a declaratory judgment that ACN has not asserted any arbitrable claims and Plaintiffs are not obligated to proceed with the arbitration against them; and (2) the Court to permanently enjoin the arbitration proceedings and require ACN to withdraw the Arbitration Demands. (Doc. No. 1).

Plaintiffs sought an administrative stay from the AAA administrator. (Doc. No. 12-14). On August 2, 2022, the AAA denied Plaintiffs' request to stay the arbitration until the "jurisdictional or arbitrability arguments" could be made to the arbitrators. (Doc. No. 12-15). The AAA then sought to schedule an administrative conference call to discuss the arbitrator selection process in early-to-mid August. (*Id.*). The AAA also denied Plaintiffs' request to postpone the preliminary conference while Plaintiffs sought a temporary restraining order in this Court. (Doc. No. 12-17). Also during this time, on August 10, 2022, ACN served each Plaintiff with 24 interrogatories and 20 requests for production of documents in the arbitration proceedings. (Doc. No. 12-16).

On August 12, 2022, Plaintiffs filed their Motion for a Temporary Restraining Order and Preliminary Injunction. (Doc. No. 10). On August 15, 2022, the Court granted Plaintiffs' Motion for Temporary Restraining Order in part, enjoining all AAA arbitral proceedings against Plaintiffs until the preliminary injunction hearing. (Doc. No. 13). The Court extended the Temporary Restraining Order, without objection, until it issues this written ruling on Plaintiffs' Motion. Plaintiffs' Motion for Preliminary Injunction argues they "should not be compelled to participate in an improper retaliatory arbitration process they did not consent to" and they ask the Court to

enjoin the arbitration proceedings "pending a final decision from this Court on the merits of Plaintiffs' declaratory judgment action." (Doc. No. 11).

## II. LEGAL STANDARD

TROs and preliminary injunctions are extraordinary remedies "that may only be awarded upon a clear showing that the plaintiff is entitled to such relief and may never be awarded 'as of right.'" *Paradies Shops, LLC v. Brookstone Charlotte, LLC*, No. 3:19-cv-00631, 2019 WL 6337818, at *1 (W.D.N.C. Nov. 26, 2019) (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). "The standard for granting either a TRO or a preliminary injunction is the same and is well established." *Id.* The party seeking the preliminary injunction must demonstrate all of the following: (1) it is likely to succeed on the merits of its claim; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) the injunction is in the public interest. *Id.* at *2; *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013). The decision is within the district court's discretion. *Id.* at 319.

## III. DISCUSSION

The Federal Arbitration Act ("FAA"), "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Arbitration agreements are "on an equal footing with other contracts" and should be enforced "according to their terms." *Id.* Here, the parties do not challenges the validity of the IBO Agreements or the arbitration provisions therein. Instead, they disagree about whether the arbitration provisions in the IBO Agreements delegate the arbitrability issues to an arbitrator and whether disputes asserted in the Arbitration Demands are arbitrable.

In the Fourth Circuit, courts follow a two-step framework in assessing whether a dispute is arbitrable. *Peabody Holding Co., LLC v. United Mine Workers of Am.*, 665 F.3d 96, 101 (4th Cir.

2012). "First, we determine who decides whether a particular dispute is arbitrable: the arbitrator or the court." *Id.* "Second, if we conclude that the court is the proper forum in which to adjudicate arbitrability, we then decide whether the dispute is, in fact, arbitrable." *Id.* "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract" and "possesses no power to decide the arbitrability issue" even when it finds "a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). Thus, the Court must first determine who should decide whether the disputes raised in the Arbitration Demands are arbitrable: an arbitrator or the Court.

"[A]n 'agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.'" *Henry Schein*, 139 S. Ct. at 529 (quoting *Rent-A-Center*, 561 U.S. at 70). The "general policy-based federal presumption in favor of arbitration" is not applied to "questions of the arbitrability of arbitrability issues themselves." *Id.* at 102. Instead, "the intent of the contracting parties" guides the analysis. *Id.* The agreement to arbitrate arbitrability "'must . . . clearly and unmistakably provide that the arbitrator shall determine what disputes the parties agreed to arbitrate.'" *Id.* (quoting *Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir.1999) (alteration in original)). "The 'clear and unmistakable' standard is exacting, and the presence of an expansive arbitration clause, without more, will not suffice." *Id.* "[T]o meet the 'clear and unmistakable' standard, an agreement must contain language specifically and plainly reflecting the parties' intent to delegate disputes regarding arbitrability to an arbitrator." *Novic v. Credit One Bank, Nat'l Ass'n*, 757 Fed. App'x 263, 265-66 (4th Cir. 2019).

Plaintiffs argue the IBO Agreements are silent on the question of who decides arbitrability and as such the Court must decide arbitrability. In the IBO Agreements, the parties' agreed to

arbitrate "dispute[s] between me and ACN as to our respective rights, duties and obligations arising out of or relating to this Agreement."  This provision, plaintiffs argue, does not show a clear and unmistakable intent to arbitrate arbitrability issues.  *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 526-27 (4th Cir. 2017) *abrogated on other grounds by Henry Schein*, 139 S. Ct. 524 (concluding the following language does not show a clear and unmistakable intent to submit arbitrability issues to arbitration: "[a]ny claims or controversies . . . arising out of or relating to this Agreement . . . to binding arbitration." (alterations in original)).  However, ACN asserts the IBO Agreements are not silent on who decides the arbitrability.  Instead, it argues the IBO Agreements clearly and unmistakably incorporate the AAA Rules, which commit the determination of arbitrability to the arbitrator.  Specifically, Rule 7(a) of the AAA Commercial Arbitration Rules provides:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

American Arbitration Association, *Commercial Arbitration Rules and Mediation Procedures*, Rule 7(a), https://www.adr.org/Rules.

The circuit courts considering this issue conclude that adopting AAA Rules delegating arbitrability into an arbitration agreement presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.  *See e.g. Sakyi v. Estee Lauder Companies, Inc*., 308 F. Supp. 3d 366, 379 (D.D.C. 2018); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High-Tech Institute*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006) *abrogated on other grounds by Henry Schein, Inc.*, 139 S. Ct. 524; *Terminix Intern'l Co. v. Palmer Ranch L.P.*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005).  Similarly, in *Simply Wireless,* the Fourth Circuit held "in the context of a commercial contract

between sophisticated parties, the explicit incorporation of JAMS Rules [or other like rules] serves as 'clear and unmistakable' evidence of the parties' intent to arbitrate arbitrability" because the rules expressly delegate arbitrability questions to the arbitrator. *Simply Wireless*, 877 F.3d at 528. In reaching this conclusion, the Fourth Circuit relied on other circuit courts' conclusions that incorporating JAMS Rules, or other substantively identical rules such as AAA Rules, is clear and unmistakable evidence that the contracting parties agreed to arbitrate arbitrability. *Id.* at 527-28. Therefore, as to commercial contracts involving sophisticated parties, incorporating AAA Rules into an arbitration provision is sufficient evidence that the parties clearly and unmistakably agreed to arbitrate arbitrability. *See Sunbelt Residential Acquisitions, LLC v. Crowne Lake Associates, L.P.*, No. 1:20-CV-401, 2021 WL 512228, at *7 (M.D.N.C. Feb. 11, 2021) (concluding explicit incorporation of AAA Rules serves as clear and unmistakable evidence of parties' intent to arbitrate arbitrability when the dispute involves a commercial contract between sophisticated parties).

    Notably, the Fourth Circuit reserved ruling on whether incorporating arbitration rules that delegate arbitrability meets the clear and unmistakable standard when an unsophisticated party is involved. Indeed, Plaintiffs argue *Simply Wireless* is inapplicable because they are unsophisticated individuals such that they did not know that incorporating the AAA Rules into the IBO Agreements would divest a court of jurisdiction to decide arbitrability and thus did not clearly and unmistakably agree to arbitrate arbitrability issues. After *Simply Wireless*, there is a split among district courts in the Fourth Circuit, and elsewhere, as to whether incorporating arbitration rules is sufficient to meet the clear and unmistakable standard when unsophisticated parties are involved. *Compare Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 553-55 (D. Md. 2019) *with Collins v. Discover Fin. Srvcs.*, No. PX-17-03011, 2018 WL 6434503, at *3 (D. Md. Dec. 7, 2018).

Here, the Court concludes incorporating the AAA Commercial Rules of Arbitration into the IBO Agreements is clear and unmistakable evidence of the parties' intent for an arbitrator to decide arbitrability issues. Under the plain language of the contract, clearly and unmistakably, the parties agreed that the AAA Commercial Rules of Arbitration govern the arbitration of disputes between Plaintiffs and ACN. And Rule 7(a) delegates questions of arbitrability to the arbitrator. The parties' sophistication does not change the plain language of the contract, which the Court finds as convincing evidence of the parties' intent. Further, the entirety of the IBO Agreements are complex commercial contracts. The Court cannot reconcile why it would conclude only the clear and unmistakable provisions incorporating the AAA Commercial Rules of Arbitration are unenforceable because of Plaintiffs' (lack of) sophistication, while the remainder of the arbitration provisions, or even the IBO Agreements as a whole, are not. Therefore, the Court finds that Plaintiffs and ACN clearly and unmistakably agreed that an arbitrator will decide arbitrability issues.

While the Fourth Circuit's holding in *Simply Wireless* is limited to commercial contracts between sophisticated parties, the Fourth Circuit did not foreclose on the holding's applicability to unsophisticated parties. Indeed, at least one case cited favorably by the Fourth Circuit in *Simply Wireless* included a lawsuit by what might be considered "unsophisticated" parties, although the *Fallo* court did not make such a distinction. *See Fallo*, 559 F.3d 874 (holding incorporation of AAA rules meets clear and unmistakable standard in lawsuit by students against vocational school); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015) ("Our holding does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts. Indeed, the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without

explicitly limiting that holding to sophisticated parties or to commercial contracts."). Additionally, the majority of circuit courts, including those on which the Fourth Circuit relied, conclude incorporating arbitration rules which delegate arbitrability to an arbitrator evidences a clear and unmistakable intent to arbitrate arbitrability issues, without regard to the parties' sophistication. Furthermore, circuit courts squarely considering Plaintiffs' sophistication argument find the argument "likely stretches too far" and would "ignore even the plainest of delegations." *Richardson v. Coverall North Am., Inc.*, 811 Fed. App'x 100, 104 (3d Cir. 2020); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 851 (6th Cir. 2020) ("Piersing says that we should distinguish his case because he's not a sophisticated party. But nothing in the Federal Arbitration Act purports to distinguish between 'sophisticated' and unsophisticated' parties. And as judges, we have no authority to redline Congress's work. That's probably why other circuit courts have declined to adopt Piersing's proposed distinction."); *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 552 (5th Cir. 2018).

The Court also finds Plaintiffs' position to be impracticable. Instead, adopting a rule applicable to both sophisticated and unsophisticated parties alike provides clarity and meaning to the plain terms in a valid agreement to which all parties agreed. If the Court adopts different rules based on each parties' sophistication, the differing rules will "inevitably spark collateral litigation," with briefing, argument, opinion writing, and potentially even discovery and evidentiary hearings, over whether a party was or was not sophisticated at the time it entered into the agreement, all before ever deciding arbitrability.[1] *See Henry Schein*, 139 S. Ct. at 531. There

---

[1] For example, what is the test for sophistication? Here, it appears based on oral argument that ACN disputes that Plaintiffs are unsophisticated. How does the Court determine when a party is or is not sophisticated? Does the Court hold an evidentiary hearing to consider sophistication or decide sophistication on the briefing? Should the parties engage in limited discovery before presenting evidence to the Court? If the Court ultimately decides a party is not sophisticated does

is no need to "create such a time-consuming sideshow" where the plain language of the contract is clear and evidences the parties' intent to be bound by the AAA's Commercial Rules of Arbitration, which delegate arbitrability issues to the arbitrator. *Id.* ("The exception would inevitably spark collateral litigation (with briefing, argument, and opinion writing) over whether a seemingly unmeritorious argument for arbitration is wholly groundless, as opposed to groundless. We see no reason to create such a time-consuming sideshow."). Holding otherwise is wholly inconsistent with the purpose of the FAA to enforce arbitration provisions according to their terms.

Plaintiffs also rely significantly on their argument that the SDNY and Second Circuit each already concluded the disputes in the Arbitration Demands are not arbitrable. While these arguments are persuasive, the Court finds them unavailing here. First, the Court does not interpret the SDNY and Second Circuit conclusions as broadly as Plaintiffs argue. Instead, the SDNY considered whether to compel a discovery dispute and the entire SDNY Action to arbitration based on the motion of a non-party to the SDNY Action.[2] The court held it did not have jurisdiction to compel arbitration and rejected ACN's characterization of the discovery dispute and SDNY Action. The court in the SDNY Action did not provide analysis on whether it had authority under the IBO Agreements to consider arbitrability, at least that the Court is aware, which the Court here is bound to do before it can consider any arbitrability issues. And, if this Court finds arbitrability should be decided by an arbitrator, the Court can do no more, even if the court in the SDNY Action thought the disputes are not arbitrable or if it decided that ACN's Arbitration Demands are "wholly

---

that rule apply when the unsophisticated party was represented by a lawyer? And if so, does the Court need to determine the sophistication status of the unsophisticated party's lawyer? Indeed, the Plaintiffs here assert they are unsophisticated, but it appears to the Court they are, at least now, represented by what one might consider "sophisticated" lawyers.

[2] Indeed, the court in the SDNY Action indicated that she did not view her role as either facilitating or creating barriers to ACN's ability to file arbitration demands against Plaintiff under the IBO Agreements. Instead, she was focused on the case before her. (Doc. No. 12-11 at 34).

groundless." *Henry Schein*, 139 S. Ct. at 530. Furthermore, the Court interprets the holding by the Second Circuit even narrower. The Second Circuit, considering specifically the parties and claims in the SDNY Action, held that no actual case or controversy between ACN and the Plaintiffs existed in the SDNY Action and as such the district court lacked jurisdiction to compel arbitration. (Doc. No. 12-12 at 38-46). Moreover, even if the conclusions in the SDNY Action or the Second Circuit are broader than this Court interprets, the Plaintiffs do not point to legal authority requiring this Court to follow those courts in this distinct procedural posture and context, when this Court is bound by Supreme Court and Fourth Circuit precedent to first consider whether the IBO Agreements delegated arbitrability, and if so, do no more.

For the foregoing reasons, the Court concludes the arbitrator, not the Court, must decide whether the disputes raised in the Arbitration Demands are arbitrable. Because the arbitrator will decide arbitrability, Plaintiffs did not demonstrate they are likely to succeed on the merits and the Court need not determine whether the disputes are arbitrable or analyze the remaining preliminary injunction factors.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. No. 10) is **DENIED**.

Signed: September 6, 2022

Robert J. Conrad, Jr.
United States District Judge